UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| DAVID SYDNOR | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 6:23-CV-06081-SOH |
| CITY OF HOT SPRINGS, ARKANSAS | ) | |
| HARMONEY MORRISEY, CITY CLERK, | ) | |
| Officially & Individually | ) | |
| LT. JAMES ERIC STOCKWELL, | ) | |
| Officially & Individually | ) | |
| LANA KELLY, INTRACITY TRANSIT | ) | |
| MANAGER, Officially and Individually | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S STATEMENT OF FACTS

Comes now the Plaintiff, DAVID SYDNOR, by and through his attorneys, THE GRAHAM LAW FIRM, by James Lucas Graham, and for his Statement of Facts, herein states as follows:

1. On or about August 20, 2019, Plaintiff submitted a Permit Application for a specialty transit vehicle that he wished to operate in the City of Hot Springs, AR. **Exhibit 1: Permit Application.** Said application, is the only one that was officially considered by the City, and the application is clearly marked "Specialty Transit".

2. On August 20, 2019, Plaintiff also submitted a Business/Occupation Tax Application. **Exhibit 2: Tax Application.** The Business/Occupation Tax Application that was submitted is clearly marked "Specialty Vehicle".

3. The permitting process is governed by Hot Spring City Ordinance §§ 13-1-1, et. seq, and the vehicle classification issue is specifically governed by Hot Spring Ordinance § 13-1-3, which states "[s]pecialty transit service means the operation upon the streets of Hot Springs of any vehicle for hire which is drawn by horse, mule or other animal or any other novelty-type vehicle." **Exhibit 3: Relevant Hot Spring City Ordinances.** That same ordinance defines a sightseeing vehicle as "…all motorized vehicles which are operated for conducting sightseeing tours for the general public which have a seating capacity in excess of eight passengers…" Section 13-1-19 requires sightseeing vehicles to maintain a speed consistent with the flow of traffic.

4. Plaintiff's vehicle, Bubbles, is a novelty vehicle that is powered by animals (human beings) pedaling. Accordingly, Bubbles is a specialty transit vehicle. **Exhibit 1, Exhibit 3.** Bubbles is slow, like the carriages and pedicabs, and cannot meet the speed requirement of sightseeing vehicles, like the Ducks and Trolly, which all have a traditional gas engine.

5. Plaintiff's Annual Vehicle Examination identifies Bubbles as a specialty transit vehicle. **Exhibit 4: Annual Vehicle License.** Moreover, the plaque the City required Plaintiff to install on Bubbles identifies Bubbles as a specialty transit vehicle. **Exhibit 5: Photo of Plaque**

6. There was no confusion regarding Bubbles classification until the City injected said confusion more than 10 months after Plaintiff submitted his initial application by referring to Bubbles as sightseeing/specialty transit in communications surrounding the July 2020 forced Transportation Authority Commission (hereinafter TAC) rehearing. **Exhibit 6: Correspondence Relating to July 2020 TAC Rehearing.**

7. But, there was no need for a second TAC hearing, because Plaintiff obtained unanimous TAC approval for his downtown tour on September 18, 2019. **Exhibit 7: TAC**

**Minutes From 9/18/2019.** By approval, Plaintiff means that the TAC voted unanimously in favor of making a recommendation for approval to the BOD.

8. At the September 18, 2019, TAC meeting, the City of Hot Springs considered two separate tours presented by Plaintiff. Tour 1 involved the downtown area of Hot Springs and followed the same route as the carriages and pedicabs that were already operating in Hot Springs. **Exhibit 7, Exhibit 9.** Tour 2 involved an area of town commonly referred to as the Greenway. **Exhibit 7, Exhibit 9.** Separate votes were taken on each tour and both were unanimously approved, but the Greenway tour (Tour 2) also fell under the jurisdiction of the Parks & Trails Advisory Committee (hereinafter PTAC) and, thus, required secondary approval by the PTAC. **Exhibit 7, Exhibit 9**.

9. On September 19, 2019, the PTAC denied Bubbles Greenway tour due to the fact that Bubbles has a backup electric motor to assist its peddlers in certain situations. **Exhibit 8**: **PTAC Minutes From 9/19/2019.** However, the PTAC has no authority over the downtown area of Hot Springs and did not consider or vote on the downtown tour (Tour 1). **Exhibit 24: Deposition of Harmony Morrisey, Pg 21-22.** Accordingly, TAC's previous approval of Plaintiff's downtown tour stood. Please note, the PTAC also considered Bubbles to be a specialty transit vehicle. **Exhibit 7, Exhibit 8.**

10. Following the September 18, 2019, unanimous approval of Plaintiff's downtown tour by the TAC, Plaintiff began communicating with the Hot Spring Intracity Transit Manager, Lana Kelly, in preparation for the December 3, 2019, Hot Springs Board of Directors (hereinafter BOD) meeting. Initially, the City informed Plaintiff that he would need a structure to house Bubbles and to serve as a base of operations. **Exhibit 9: David Sydnor's Affidavit.** However, since Bubbles qualifies as a specialty transit vehicle, Plaintiff was allowed to construct

a garage at his residence (approximately one block off Central Avenue) to house Bubbles and serve as Greenway Tours/Yellow Submarine's primary place of business. **Exhibit 9, Exhibit 24, Pg. 48.**

11. After obtaining approval from the City, Plaintiff applied for and obtained a building permit and constructed a garage at his residence. **Exhibit 9, Exhibit 10: Building Permit, Materials Invoice, Labor Invoice.** In total, Plaintiff expended in excess of $15,000.00 building the garage. **Exhibit 9, Exhibit 10.**

12. On October 17, 2019, Lana Kelly sent Plaintiff an email with an attached list of items that needed to be completed in advance of the December 3, 2019, BOD meeting, and indicated that if he completed all the requirements listed before December 3rd, he could appear at the hearing to obtain BOD approval. **Exhibit 11: 10/17/2019 Email from Lana Kelly and Attached Requirements List**. According to Kelly, Harmony Morrisey provided the initial list of requirements Plaintiff needed to complete to appear before the BOD. **Exhibit 9, Pg 17-18.**

13. The items contained on the list were all simple and straightforward and could have easily been completed by Plaintiff. However, Lana Kelly sent a follow-up email to Plaintiff on November 5, 2019, informing him that he would have to obtain approval from the Arkansas Department of Transportation (hereinafter AR DOT) to operate on Central Avenue. **Exhibit 12: Second Email from Lana Kelly on 11/5/2019**. Lana Kelly indicated in the email that it may take Plaintiff a while to obtain AR DOT approval.

14. Accordingly, the complete list of requirements where as follows: (1) photos of the vehicle; (2) specify the exact company name; (3) provide a fee schedule; (4) produce a map; (5) complete the Vehicle Inspection; and (6) obtain AR DOT approval to operate on Central Avenue. **Exhibit 11.**

15. Plaintiff immediately began his efforts to satisfy the requirements set out by Lana Kelly, and easily completed items 1 through 4, but Plaintiff experienced difficulties completing items 5 and 6 of the requirements, e.g. completing the Vehicle Inspection and obtaining AR DOT approval. **Exhibit 9, Exhibit 13: Photos, Route Map, and Fee Schedule.** Regarding the business name requirement, Plaintiff's business name was listed on the initial Permit Application, and said name remained Plaintiff's business name throughout the entire permitting process and was listed on all relevant documents, e.g. Greenway Tours/Yellow Submarine. **Exhibit 1, Exhibit 2, Exhibit 7, Exhibit 9, Exhibit 27: TAC Minutes from 7/24/2020.** Plaintiff has the right to name his business whatever he wishes to name it and Greenway Tours/Yellow Submarine is the name he chose to do business under.

16. After months (November 7, 2019, through July 15, 2020) of attempting to obtain AR DOT approval to operate on Central Avenue, Plaintiff ultimately discovered that it was not possible for him to obtain AR DOT approval, because AR DOT lacks the authority to approve a vehicle's operation on a specific highway. **Exhibit 14: 7/15/2020 Email from Mark Headley, AR DOT Division Head, & Exhibit 15: Emails to and from Plaintiff and AR DOT between 11/7/2019 and 7/15/2020.**

17. Plaintiff also had difficulties completing the Vehicle Inspection. Plaintiff immediately attempted to arrange his Vehicle Inspection, but it took months for Plaintiff to facilitate the initial inspection which occurred on March 15, 2020. **Exhibit 9.** At the conclusion of said inspection, Plaintiff was instructed that he needed to install a logo on the vehicle and that the examination would be completed once he had done so. **Exhibit 9.** Plaintiff installed the logo on March 16, 2020, and immediately requested another inspection, but Plaintiff was not able to secure a second inspection until June 15, 2022. **Exhibit 9.**

18. At the June 15, 2020, vehicle examination, conducted by Eric Stockwell, Plaintiff was instructed that he needed to have a plaque installed on Bubbles specifying the top speed, wattage, and vehicle classification, e.g. specialty transit. **Exhibit 9.** Plaintiff installed the plaque as requested and ultimately passed the final Vehicle Inspection, conducted by Officer Samson, on June 30, 2020. **Exhibit 4.** In total, it took Plaintiff more than six months to complete his Vehicle Inspection, e.g. November 7, 2019, to June 30, 2020. During the three inspections, only one safety concern was raised which concerned other vehicles' ability to safely pass Bubbles on Central Avenue. **Exhibit 4.** Said concern was included on the Inspection Form.

19. According to Hot Springs' City Ordinances § 13-1-18(b), passing the Annual Vehicle Inspection serves as proof that Plaintiff and his vehicle were in compliance with all relevant Hot Springs City Ordinance provisions. **Exhibit 3: Relevant Hot Springs City Ordinances.** Vehicle Inspection are not required to be completed prior to the TAC hearing but are necessary to have completed before the BOD hearing. **Exhibit 24, Pg 30, 67-68.** And, according to the City Clerk, Morrisey, passing the Vehicle Inspection deems the vehicle roadworthy. **Exhibit 24, Pg 30-31.**

20. After completing the Vehicle Inspection, Plaintiff took the completed Vehicle Inspection Form to the City Clerk's office on or about July 5, 2020. **Exhibit 9.** The City Clerk refused to accept the Form and refused to schedule a BOD hearing so Plaintiff could obtain the BOD's approval and be issued a License. **Exhibit 9.**

21. Simultaneously, due to the comment on the Annual Vehicle Examination form indicating concerns about other vehicles' ability to pass Bubbles safely on Central Avenue, Plaintiff turned in a new route map for his downtown route which deleted one block from the route. **Exhibit 9, Exhibit 13.** The block that was deleted is the only block of the route that

ventured onto Central Avenue. **Exhibit 9, Exhibit 13.** The City Clerk informed Plaintiff that his deletion of one block from the TAC approved downtown route constituted an amended application and he would be required to begin the application process over from scratch and reappear before the TAC. **Exhibit 9, Exhibit 16.** Plaintiff turned in four separate maps, but they all contained the exact same blocks with four possible paths for traversing the streets encompassing said blocks. **Exhibit 13 (Maps 1-4).** The fifth and sixth maps contained in Exhibit 13 are the original Downtown route (approved by TAC) and Greenway route (approved by TAC but denied by PTAC). **Exhibit 7, Exhibit 8, Exhibit 13 (Maps 5 & 6).**

22. Plaintiff objected to the City Clerk's amended application proclamation and pointed out that Hot Springs City Ordinance § 13-1-13(g), which allows for the revision of applications without starting the entire application process over from scratch. **Exhibit 3: Hot Springs City Ordinance § 13-1-13, Exhibit 9, Exhibit 25, Pg 1.** During her Deposition, Morrisey testified that the expansion of routes by existing specialty transit permit operators requires Board approval, but an operator, such as JJ's Pedicabs, could delete or stop servicing a block without obtaining any sort of approval or submitting paperwork. **Exhibit 24, Pg 43-44.** Plaintiff told the Clerk he did not amend his application, did not request a second TAC hearing, and had already been approved by the TAC for an approval recommendation to the BOD. **Exhibit 9, Exhibit 25, Pg 1.** The Clerk scheduled the hearing anyway. **Exhibit 16: 7/6/2020 Email from City Clerk to TAC & Other City Officials.** Please note, Plaintiff verbally recited the streets for his proposed downtown route at the original TAC hearing and was instructed to submit a map prior to his appearance before the BOD. **Exhibit 11, Exhibit 23: Deposition of Lana Kelly, Pg 32.**

23. On July 6, 2020, City Clerk, Harmony Morrisey, sent an email to the members of the TAC and other City officials. Said email changed the wording of the September 18, 2019, TAC Minutes to make it appear that the TAC's approval of Plaintiff's entire original application and both routes (downtown & Greenway) were conditioned on the PTAC's approval of the Greenway route at the September 19, 2019, PTAC meeting. **Exhibit 16.** In other words, Morrisey lead the TAC members to believe that Plaintiff's application, including the downtown route, had been denied at the September 18, 2019, TAC meeting, which is false. **Compare the language in Exhibit 7 with the language in Exhibit 16.** Morrisey also references Plaintiff's inability to obtain ARDOT approval as a reason for needing to reappear before the TAC. **Exhibit 16.**

24. On July 8, 2020, City Clerk, Harmony Morrisey, sends an email to Police Officer Erik Stockwell requesting that he respond with any "issues" that should be addressed at the July 24, 2020, TAC rehearing on Plaintiff's "amended application". **Exhibit 17: 7/8/2020 Email from City Clerk to Erik Stockwell.**

25. On July 12, 2020, Erik Stockwell responds with a list of safety concerns that effectively bars Plaintiff from operating Bubbles on every street in the entire City of Hot Springs except for one, Whittington Avenue, and effectively amends Plaintiff's previously passed vehicle examination to failed. **Exhibit 18: 7/12/2020 Email from Erik Stockwell to City Clerk.** Again, the only concern written on the Vehicle Inspection involved the ability of Bubbles to be passed safely by other vehicles on Central Avenue and Plaintiff subsequently removed Central Avenue from the downtown route due to said concern. **Exhibit 4 and Exhibit 9.** Clerk Morrisey shared Stockwell's concerns with the TAC members before the second hearing was held. **Exhibit 24: Deposition of Harmony Morrisey, Pg 58-59.**

26. On July 15, 2020, the City Clerk sent Plaintiff a letter notifying him of the July 24, 2020, TAC rehearing on his “amended application.” **Exhibit 19: 7/15/2020 Letter from City Clerk.** Said letter dual classifies Bubbles as sightseeing or specialty transit and indicates that Plaintiff needs a place of business (on Central Avenue) for selling tickets and receiving calls. **Exhibit 19.** A place of business of that nature is a sightseeing vehicle requirement that specialty transit vehicles are exempt from. **Exhibit 3, Exhibit 24, Pg 81.** The City had previously approved Plaintiff to operate out of the garage he had constructed at his residence which is approximately one block off Central Avenue behind the Duck’s place of business. **Exhibit 9, Exhibit 10, Exhibit 24, Pg 48**.

27. On or about July 27, 2020, Plaintiff received a letter from the City notifying him that the TAC had denied his permit application for a specialty transit and sightseeing vehicle. **Exhibit 20: 7/27/2020 TAC Denial Letter.** The letter cites safety concerns and missing application requirements as the reasons for denial, but Plaintiff had satisfied all specialty transit application requirements he was given, except for obtaining ARDOT approval. **Exhibit 4, Exhibit 9, Exhibit 11, Exhibit 13, Exhibit 20.** The letter also dual classifies Plaintiff’s application as “sightseeing and specialty transit”. **Exhibit 20.**

28. Hot Springs City Ordinance § 13-1-14(g) prohibits the dual classification of vehicles. **Exhibit 3: Relevant Hot Springs City Ordinance.**

29. At this point, Plaintiff had expended approximately $80,000.00 purchasing Bubbles, importing Bubbles, purchasing a trailer to haul Bubbles, building a garage to house Bubbles, and paying applicable fees and other related expenses, and he had invested countless hours of work attempting to navigate the City’s permitting process. **Exhibit 21: Bubbles Purchase Docs, Import Tariffs, & Trailer Purchase, Exhibit 9, and Exhibit 10.** However, it

became clear to Plaintiff that the deck was stacked against him, and Defendants would not allow him to complete the application process. **Exhibit 9, Exhibit 22: Emails Speaking Badly About Plaintiff.** As a result of the City's actions, Plaintiff has been prevented from earning a living in his chosen occupation, his reputation as a businessman in the tourism industry has been damaged, and he has suffered significant mental anguish. **Exhibit 9.** This lawsuit followed.

30. Before filing suit, Plaintiff complained about his treatment at the hands of Defendants to numerous City officials, distributed packets containing his arguments and evidence, and appeared before the BOD on two (2) separate occasions to complain of disparate treatment and constitutional violations, but nothing was done. **Exhibit 9, Exhibit 26: Complaints to City Officials.** Plaintiff believes that Defendants did not like him and intentionally sabotaged his application process. **Exhibit 9.** His belief is based on the way in which Defendants spoke to him directly, the way they spoke about him in correspondence to one another, and the various detrimental actions referenced above that were persistently perpetrated against him. **Exhibit 9, Exhibit 22.** There was no rational basis for Defendants disparate treatment of Plaintiff.

31. The carriages and pedicabs that currently operate in the City of Hot Springs are specialty transit vehicles and are similarly situated to Plaintiff, because they are primarily powered by animals or some other novel means, they are large slow vehicles, and they are difficult to pass. **Exhibit 25: Affidavit of Jason Bennet, Exhibit 3, Exhibit 9.** The City currently has two active sightseeing permitholders, the Ducks & Trolly, and two active specialty transit permitholders, JJ's Pedicabs and the Carriages. **Exhibit 24, Pg 28, 44.** Both specialty transit operators service at least a portion of Central Avenue. **Exhibit 24, Pg. 84, Exhibit 26.** Carriages and pedicabs were not required to obtain AR DOT approval to travel on Central, they

were not dually classified, the City did not go out of its way to solicit safety concerns from their Vehicle Inspection Officers, they did not have their TAC approvals and Annual Vehicle Inspections retroactively invalidated, they did not have to appear before the TAC twice or repeat any other portion of the application process, and they were not expected to maintain a place of business on Central Avenue to sell tickets and take calls. **Exhibit 9, and Exhibit 25.**

32. Defendant, Lana Kelly, was the City's Intracity Transit Manager during the relevant time period and was responsible for accepting transit permit applications, for ensuring the applications were complete, and for scheduling TAC hearings. **Exhibit 23, Pg 9-10.** Kelly inherited her permit application duties from someone that retired sometime before 2019, did not receive any specialized training for the role, was not familiar with the City's Code ordinances involving transportation, and performed the duties for about 2 years before they were taken over by the City Clerk. **Exhibit 23, Pg 9, 11.** Kelly attended the TAC meetings during the relevant periods, was responsible for transcribing the TAC minutes, and recalled that Plaintiff had verbally recounted his proposed routes to the TAC at the September 2019 hearing and submitted actual maps to Harmony Morrisey later. **Exhibit 23, Pg 32.**

33. Defendant, Harmony Morrisey, was appointed City Clerk of Hot Springs by the City Manager in May of 2019. **Exhibit 24, Pg 8.** At that time, Morrisey would not get involved in the permitting process until after the applicant received TAC approval and the application packet was complete. **Exhibit 24, Pg 13.** Morrisey was responsible for ensuring all requirements had been met, arranging the applicant's BOD hearing, and assembling a packet for the BOD to review at the hearing. **Exhibit 24, Pg 37-38.** Morrisey vaguely recalled Plaintiff communicating with the City concerning the construction of Bubble's garage but could not recall any specifics. **Exhibit 24, 48.** Finally, Morrisey admitted that the City Clerks's Office had no filing system for

date/time marking submissions from transit permit applicants' submissions in 2019 and 2020, did not maintain files at the Clerk's office, and did not make or keep a record of calls or emails from applicants. **Exhibit, Pg 69-70.**

WHEREFORE, the Plaintiff, DAVID SYDNOR, respectfully prays that Defendants' Motion for Summary Judgment be denied; for his costs and attorney fees incurred herein; and for all other just and proper relief to which he may be entitled at law or equity.

Respectfully submitted,

DAVID SYDNOR, Plaintiff
THE GRAHAM LAW FIRM, his attorneys

/s/ James Lucas Graham

By: James Lucas Graham
Ark. Bar No. 08229
30514 Hwy 67
Malvern, AR 72104
(501) 351-6373 (Office)
Jlukegraham@gmail.com

**CERTIFICATE OF SERVICE**

We, THE GRAHAM LAW FIRM, hereby certify this pleading has been served upon the attorneys of record for all other parties, or the parties themselves if proceeding pro se, in this proceeding by delivering a copy of said pleading to the attorney or party, or to the offices of such attorney or party personally, or by placing a copy in the U.S. Mail addressed to such attorney or party at his or her address as listed below, with sufficient prepaid postage, of via the efile system on this 19th day of June 2024.

/s/ James Lucas Graham
THE GRAHAM LAW FIRM

DELIVERED VIA EFILE:
Gabrielle Gibson, Attorney for Defendants
ggibson@arml.org